| ¶ PETTIGREW, Judge,
dissenting.
This is an appeal by defendant, Johnnie S. Peairs, from a trial court judgment in favor of plaintiff, Jerry Peairs, overruling Mrs. Peairs’ exception of res judicata and holding that the benefits due Mr. Peairs from Gulf States Utilities Company Employees’ Trusteed Retirement Plan are disability benefits and the separate property of Mr. Peairs. For the following reasons, I respectfully dissent. In my opinion, the trial court was manifestly erroneous in overruling Mrs. Peairs’ Exception of Res Judicata.
The parties were married on August 23, 1971, and divorced on December 7, 1990. During the marriage, Mr. Peairs was employed by Gulf States Utilities. On April 17, 1991, Mr. Peairs filed suit for judicial partition of community property acquired during his marriage with Mrs. Peairs. Mrs. Peairs filed a Notice of Traversal to Mr. Peairs’ Sworn Detailed Descriptive List noting that Mr. Peairs had failed -to include various retirement plans that were available to him from Gulf States Utilities. Mrs. Peairs then filed an Answer, Recon-ventional Demand, and Sworn Detailed *734 Descriptive List wherein she listed the various Gulf States Utilities retirement plans as community property. Mr. Peairs filed a Notice of Traversal to Mrs. Peairs’ Sworn Detailed Descriptive List, but did not traverse her listing the retirement accounts as community property. At the same time, Mr. Peairs filed | ¡>an Amended Sworn Detailed Descriptive List and listed his retirement accounts as community property.
Mr. Peairs became disabled on or about September 23,1993, after suffering a heart attack. He thereafter applied for retirement benefits based on his heart condition. According to the record, Mr. Peairs’ employment with Gulf States Utilities terminated effective May 1, 1994, and he began receiving benefits at that time. Subsequently, on February 15 and 16, 1995, the parties signed a Settlement Of Community whereby they acknowledged the various retirement benefits available to Mr. Peairs through his employment with Gulf States Utilities that include survivor annuity benefits for Mrs. Peairs. The parties agreed that the benefits would be distributed pursuant to a Qualified Domestic Relations Order (“QDRO”) to be prepared and signed within 30 days of their partition agreement.
On March 20, 1995, the trial court signed a QDRO that included the following language, “Until this order is accepted by the Plan Administrator this court shall retain jurisdiction to modify the same. The Court retains jurisdiction to make such further orders as are appropriate to enforce and clarify the provisions of this Order or to enlarge same to include any retirement plans not specifically mentioned herein.” By notice dated March 12, 1996, Gulf States Utilities Informed the parties that the QDRO “fail[ed] to satisfy the qualification requirements set forth in Section 414(p) of the Internal Revenue Code[,]” and as such, the order was “determined. NOT to be a QDRO.”
On November 19, 1996, an amended QDRO was signed by the trial court and included the language, “Until this Order is accepted by the Committee, this Court shall retain jurisdiction to modify the same.” In a letter to the parties dated February 24, 1997, this amended order was accepted by Gulf States Utilities as a valid QDRO. According to this letter, the parties were given 30 days to object to this determination. On March 18, 1997, Mr. Peairs, through his attorney, notified Gulf States Utilities of his objection to the February 24 letter. He lodged “an objection to recognition of Johnnie S. Peairs Williamson as an alternate payee having an interest in and rights to certain benefits of Mr. Peairs,” noting that “Louisiana law provides that disability retirement benefits are not community |aassets because such benefits replace future wages lost due to disability.” In response to Mr. Peairs’ letter of March 18, Gulf States Utilities notified the parties that it would “withhold and separately account -for any amounts that would otherwise be payable to Mrs. [Peairs] in accordance with the Order for a period of thirty (30) days from the date of this letter.”
On April 15, 1997, Mr. Peairs filed a Motion To Amend And/Or Modify Qualified Domestic Relations Order, alleging that the funds due him under the Gulf States Utilities retirement plan were his separate property. Mrs. Peairs filed an Exception Of Res Judicata asserting that the Settlement Of Community previously executed by the parties put an end to all issues between the parties and that Mr. Peairs had no right to “reopen” the partition agreement.
Following the hearing of this matter, the trial court overruled Mrs. Peairs’ exception and concluded that Mr. Peairs’ retirement benefits in question were his separate property. In oral reasons for judgment, the trial court stated:
The Court has reviewed this matter. First[,] the peremptory exception filed on behalf of the moving party [Mrs. Peairs]. The Court is of the opinion that the agreement was dependent upon *735 a suspensive condition that never did occur. Therefore, it never became a thing adjudged, not final. The Court believes that the Exception of Res Judi-cata is not well founded and, therefore, overrules it.
With respect to the merits of this matter, the Court is of the opinion that it has jurisdiction to declare the rights of the parties. The Court has reviewed the jurisprudence and is of the opinion that the property in question is separate.
In a judgment dated December 22, 1997, the trial court found as follows:
The Court, having considered the law, stipulations, and evidence,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
(a) Defendant’s Exception of Res Ju-dicata is overruled.
(b) The Qualified Domestic Relations Order Issued November 19, 1996, in this matter is amended to exclude benefits due Petitioner from Gulf States Utilities Company Employees’ Trusteed Retirement Plan, and its successor The Gulf States Utilities Corporation Retirement Plan for Non-Bargaining Employees Plan, from the community of acquets | ¿and gains existing between Petitioner and Defendant that was partitioned by act dated February 15-16,1995;
(c) The Plan benefits described in (b) above, are the separate property of Petitioner as disability benefits;
(d) The Plan is ordered to pay all disability payments to Petitioner.
(e) The Plan is ordered to release to Petitioner, after the delay for taking a suspensive appeal has passed, all benefits previously held in escrow during the pendency of the Qualified Domestic Relations Order determination; and,
(f) Defendant is cast for all costs.
It is from this judgment that Mrs. Peairs has appealed, assigning as error the trial court’s overruling her Exception of Res Judicata and the trial court’s determination that the retirement benefits in question were the separate property of Mr. Peairs. On appeal, Mrs. Peairs argues that she and Mr. Peairs entered into a community property settlement that “specifically put an end to the litigation that was pending.” She further alleges that this settlement amounts to a transaction or compromise that should operate as a res judicata bar to Mr. Peairs’ subsequent Motion To Amend And/Or Modify Qualified Domestic Relations Order. I agree.
The peremptory exception of res judica-ta is based on the conclusive legal presumption of a thing previously adjudged between the same parties. While the doctrine of res judicata is ordinarily premised on a final judgment, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties. Balley v. Martin Brower Co., 94-1179, p. 3 (La.App. 1 Cir. 4/7/95), 658 So.2d 1299, 1301.
Pursuant to La. R.S. 13:4231, res judica-ta is defined as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
| b(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigat *736 ed and determined if its determination was essential to that judgment.
According to the official notes under this article, “[t]he central inquiry is not whether the second action is based on the same cause or cause of action ... but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.”
After a careful review of the entire record, I find that the trial court was manifestly erroneous in overruling Mrs. Peairs’ Exception of Res Judicata. The trial court erroneously concluded that the amended QDRO was “dependent upon a suspensive condition that never did occur.” While I agree that the QDRO at issue was dependent upon a suspensive condition, i.e., the committee had to accept the QDRO before it became final, I disagree with the trial court’s conclusion that the condition “never did occur.” By letter dated February 24, 1997, Gulf States Utilities accepted the court’s amended order as a valid QDRO, thus satisfying the suspensive condition in the court’s order.
Mr. Peairs would argue that the amended QDRO was never accepted by Gulf States Utilities because of his objections to the letter of February 24, 1997. Presumably, Mr. Peairs’ argument is that the condition set forth in the amended QDRO should be read to include language that the order must be accepted by Gulf States Utilities and approved by him before becoming final. Although not specifically addressed by the trial court, this is apparently the basis for its judgment holding that the suspensive condition never occurred. However, Mr. Peairs’ objection to the QDRO had nothing to do with the validity of the QDRO. Rather, Mr. Peairs’ objection is to the “recognition of Johnnie S. Peairs Williamson as an alternate payee having an interest in and rights to certain benefits” that he claims as separate property.
| ¿This is the first time since he initiated these proceedings that Mr. Peairs has raised the issue of the separateness of these retirement benefits. Until this point in time, Mr. Peairs has always agreed that these benefits were community property. In fact, Mr. Peairs even listed these benefits as community property on his Amended Sworn Detailed Descriptive List. Furthermore, the parties entered into a contract whereby they agreed to partition their community property in accordance with the terms of the settlement. With respect to the distribution of Mr. Peairs’ retirement benefits, the parties reached the following agreement:
The parties agree that all of the retirement accounts and funds held by Gulf States Utilities (Gulf States Utilities), its successors, assigns, affiliates, subsidiaries, shall be divided between the parties pursuant to a Qualified Domestic Relations Order to be prepared and signed at a later date but no later than 30 days following the last date of signature on this partition agreement.
This community property settlement is binding on the parties as a valid transaction and compromise pursuant to La. Civ. Code art. 3071. Walton v. Walton, 597 So.2d 479, 483 (La.App. 1 Cir.1992). A contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. La. Civ.Code art.2045; Hampton v. Hampton, Inc., 97-1779, p. 5 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1189. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ.Code art. 2050. When the words of the contract are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. Civ.Code art.2046.
It is clear from the terms of the parties’ agreement that they intended for all of the retirement benefits in question to be divided pursuant to a QDRO. As indicated, the *737 trial court issued an amended QDRO on November 19, 1996, which was later accepted as a valid QDRO by Gulf States Utilities. Gulf States Utilities’ acceptance operated to satisfy the condition set forth by the court in the amended QDRO, “Until this Order is accepted by the Committee, this Court shall retain jurisdiction to modify same.” With this acceptance by Gulf States Utilities, the agreement reached by the parties regarding the ^settlement of their community property became final, and the legal obligation and rights of the parties were set.
In my opinion, the facts of this case are easily distinguishable from the facts in Bordes v. Bordes, 98-1004, 780 So.2d 443, 1999 WL 213020 (La.4/13/99). In Bordes, the issue to be decided by the trial court was whether the disability retirement benefits received by Mr. Bordes were separate or community property. However, in the instant case, this was not an issue before the trial court as the parties had always agreed that the retirement benefits in question were community property.
For the foregoing reasons, I would reverse the judgment of the trial court overruling Mrs. Peairs’ Exception of Res Judi-cata, and would order that the retirement benefits in question be distributed pursuant to the community property settlement and amended QDRO, whereby Mrs. Peairs is recognized as an alternate payee and shall be assigned 50 percent of the retirement benefits that Mr. Peairs is receiving. Furthermore, I would order, that all benefits previously withheld from Mrs. Peairs by Gulf States Utilities be released to Mrs. Peairs.