886 So.2d 1179 (2004)
Dale and Virgene Koehler BIGGERS
v.
ALLSTATE INSURANCE COMPANY, Donna Bianchini-Tully and American Automobile Insurance Company.
No. 04-CA-282.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*1180 Frank B. Hayne, New Orleans, LA, and William T. Abbott, Jr., New Orleans, LA, for Plaintiff/Appellant.
James L. Donovan, Jr., P.M. Donovan, Metairie, LA, Donald A. Hoffman, Lawrence J. Centola, Jr., New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
On July 28, 2003, plaintiffs/appellants, Dale and Virgene Koehler Biggers, filed a petition in the 24th Judicial District Court against defendants/appellees Allstate Insurance Company, Donna Bianchini-Tully, and American Automobile Insurance Company Inc. as the errors and omissions insurer of Bianchini-Tully. The petition alleged that in 1995, Dale Biggers contacted Bianchini-Tully, an agent for Allstate, for a homeowner's insurance application. According to the petition, Biggers informed Bianchini-Tully that he wanted the same amount of coverage that he had with other carriers, including coverage for loss of jewelry and silverware. The petition alleged that Bianchini-Tully provided an application "which made no discernible reference to the possibility of an exclusion of coverage or a limitation of liability on coverage for the Biggerses jewelry and silverware." Following issuance of the policy, a copy of which the Biggerses denied receiving, plaintiffs provided Bianchini-Tully in June 1996 with updated appraisals of the jewelry. On July 29th, 2002, the Biggers' home was burglarized at which time many items were stolen, including silverware valued at $13,700.00 and jewelry valued at $27,700.00. After making a claim, Bianchini-Tully advised the plaintiffs that there was a $1000.00 limit on coverage for jewelry, and a $2500.00 limit on coverage for silverware. According to the petition, Allstate acknowledged the existence of coverage under the policy and made payment in December 2002 in the amount of $14,320.00, which payment included the above-stated limited sums for the jewelry and silverware.
Since the burglary, $960.00 worth of jewelry, and $165.00 worth of silverware has been recovered. The Biggers sued for the remaining value of the jewelry and silver, as well as for emotional distress and "personal degradation" alleging that Bianchini-Tully was negligent in failing to obtain the proper coverage. It was further alleged that Allstate was vicariously liable as the agent of Bianchini-Tully, and liable under its policy.
Allstate filed a general denial. Bianchini-Tully and American Automobile filed a "Peremptory Exception of Prescription/Presumption (sic) Of Or In The Alternative Motion For Summary Judgment." The pleading urged that La. R.S. 9:5606 governs actions against insurance agents and that under that statute, the claim is barred by peremption. Following a hearing, the trial court granted the exception and dismissed the claim against Bianchini-Tully and American Automobile. The Biggerses appeal.
La. R.S. 9:5606, Actions for professional insurance agent liability, reads as follows:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and *1181 proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
La. Civil Code Art. 3458 defines peremption as "a period of time fixed by law for the existence of a right." Further, under that article "unless timely exercised, the right is extinguished upon the expiration of the peremptive period." Peremption may not be renounced, interrupted, or suspended. La. Civil Code Art. 3461.
Our Supreme Court has considered a case involving the preemptive period for legal malpractice claims under La. R.S. 9:5605, a statute closely akin to the law at issue.[1] In that matter, the plaintiff sued his former attorney for malpractice, alleging that the attorney was negligent in failing to file a particular claim on his behalf. This Court had held that the preemptive period of R.S. 9:5605 was, in effect, suspended during the period in which the defendant attorney continued to represent plaintiff. In its finding that the malpractice suit was barred by preemption, the Supreme Court held:
As a suspension principle based on contra non valentem, the "continuous representation rule" cannot apply to peremptive periods. This is clear from the wording of La. R.S. 9:5605 ("[t]he one-year and three-year periods of limitations ... are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended") and of Civil Code article 3461 ("[p]eremption may not be renounced, interrupted, or suspended.") In addition, this Court has distinguished prescription from peremption in that contra non valentum does not apply to preemption.
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ.Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable.[2]
The Supreme Court recognized the "perceived inequities" of that law, nevertheless finding that while the terms of the *1182 legal malpractice statute of limitations statute may seem unfair in that a person's claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative prerogative. The Court found La. R.S. 9:5628, the medical malpractice statute, analogous in that a person's cause of action may prescribe before he even knows he has a cause of action because of the latency period of his condition.
Dale Biggers submitted an affidavit in opposition to the Exception, attesting that in 1996, Bianchini-Tully requested jewelry appraisals which he obtained and provided, and that the agent did not tell him that the coverage she obtained was inadequate to cover the jewelry as appraised. In the trial court and in brief on appeal, the Biggers, in essence, urge that the renewal of the policies each year after 1995 were new contracts and thus constituted a continuing tort on the part of Bianchini-Tully. According to plaintiffs, when each previous policy was annually replaced, these were separate contracts in which Bianchini-Tully "failed to take advantage of the specific opportunity available to point out to the Biggers the inadequacy of the coverages of their silverware and jewelry..."
A similar argument has been rejected by the First Circuit.[3] There, plaintiffs had in effect an automobile insurance policy which provided UM coverage. They also had a Personal Liability Umbrella Policy in which, prior to the fatal accident, plaintiff's decedent had executed a waiver of UM coverage. Plaintiffs sued the carrier and agent for various alleged acts of negligence in relation to the waiver, including allegations that the agent misrepresented the nature of the coverage and mislead them into believing it was not necessary. Plaintiffs there urged that each renewal of the policy constituted a separate tort. The court found:
In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages. See Bustamento v. Tucker, 607 So.2d 532, 540 (La.1992). However, we find that these renewals were nothing more than a continuation of the ill effects of an original unlawful act. See South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531, 533 (La.1982). It was at the time that Craig Lewis obtained Douglas and Mary Bel's signatures on the 1993 waiver and 1994 rejection respectively that any damage would have been sustained, being the loss of UM coverage under the PLUP. After the rejections were signed, the rejection of UM coverage under the PLUP remained effective for the life of the policy, and no additional rejection was necessary when a renewal was issued.
Further, in that case, plaintiffs did not change or discuss coverage with the agent after the rejections were signed. "Therefore, after the rejections were signed, there was no occasion for Craig Lewis to misrepresent the nature of Douglas and Mary Bel's coverage or the implications of not having UM coverage."[4]
Although the Biggers attempt to distinguish their situation, we find these cases analogous. The Biggers claim that they never received a copy of their policy in the *1183 approximately seven years prior to the burglary, yet there is nothing in the record to indicate that they contacted Bianchini-Tully to obtain a duplicate copy during this period. After the initial error on the part of Bianchini-Tully and the issuance of the original policy, there was no occasion for Bianchini-Tully to misrepresent the amount of coverage. We concur with the reasoning of the First Circuit that such policy renewals did not constitute a continuing tort.
We agree with the Supreme Court that while a three-year peremptive period may not be particularly generous:
"[i]t is not our role to consider the policy or the wisdom of the [Legislature] in adopting [t]he statute. It is our province to determine only the applicability, legality and constitutionality of the [statute]."[5]
For the foregoing reasons, the judgment is affirmed. Plaintiffs are assessed all costs of appeal.
AFFIRMED.
NOTES
[1] Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291.
[2] Id., citing Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986).
[3] Bel v. State Farm Mut. Auto. Ins. Co., XXXX-XXXX (La.App. 1 Cir. 2/14/03), 845 So.2d 377, writs denied XXXX-XXXX (La.5/30/03), 845 So.2d 1057; XXXX-XXXX (La.5/30/03), 845 So.2d 1058.
[4] Id.; see also Huffman v. Goodman, 34,361, (La.App. 2 Cir. 4/4/01),784 So.2d 718, writ denied XXXX-XXXX (La.6/22/01) 794 So.2d 791.
[5] Reeder, supra, citing Chamberlain v. State, Through DOTD, 624 So.2d 874, 879 (La.1993).